**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

KEVIN BUTTERWORTH,               *

     Plaintiff,               *

v.               *               Case No.: PWG-15-1721

CLARENCE BLACK, *et al.*,               *

     Defendants.               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Following the termination of his employment from the Prince George's County Police Department, where he worked as a police officer, Kevin Butterworth filed suit in this Court pursuant to 42 U.S.C. § 1983, alleging that Corporal Clarence Black, Lieutenant Jason Fisher, and Prince George's County (the "County") harassed him, suspended him, and terminated his employment in retaliation for whistleblowing. Compl., ECF No. 1. The County has moved to dismiss on *Younger*[1] or *Rooker–Feldman*[2] abstention grounds or under the doctrine of collateral estoppel, based on state court litigation in which the court found that Butterworth used excessive force and affirmed the administrative board's termination of his employment on that basis. Def.'s Mot. 1, ECF No. 14; Def.'s Reply 3, ECF No. 16; Def.'s Supp. 5–8, ECF No. 32.[3] Dismissal is not warranted under either abstention doctrine, but the *Younger* abstention doctrine

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

[2] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

[3] The parties fully briefed the issues. ECF Nos. 14, 15, 16, 31, 32. A hearing is not necessary. *See* Loc. R. 105.6.

requires that I stay his claims, which seek monetary relief, during the pendency of the state court litigation, which currently is on appeal. Dismissal is not warranted under collateral estoppel, either, even though Butterworth is estopped from re-litigating the factual findings of the state court. The scope of this litigation is much broader, encompassing claims that the County retaliated in other ways and that the termination of his employment, even if justified by his excessive force, was in retaliation for his whistleblowing. Therefore, collateral estoppel does not bar Butterworth's § 1983 claims. Accordingly, I will deny the County's motion in part and grant it in part.[4]

## **Background**

On November 21, 2013 Kevin Butterworth, who was a County police officer at that time, responded to another officer's call for assistance and was pursuing a suspect when a woman "jumped on his back." Compl. ¶¶ 54–57. Butterworth "struck her with his baton" until she "was subdued." *Id.* ¶ 58. Butterworth was advised on December 11, 2013 that Internal Affairs would investigate the incident. Def.'s Ex. 2, ECF No. 14-2.

Then, on April 16, 2014, before the investigation of the November incident had concluded,[5] Butterworth reported to Corporal Kyle Bodenhorn in Internal Affairs a March 9, 2014 incident in which Butterworth's immediate supervisor, Defendant Corporal Clarence Black, "had a citizen strip searched on the side of the road, without probable cause, in full view of the

---

[4] As for the individual Defendants, there is no indication on the docket that they have been served, despite the fact that Plaintiff filed suit more than a year ago. Butterworth will be ordered to show cause why his claims against them should not be dismissed pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8(a), which, at the time Butterworth filed suit, required service within 120 days.

[5] Plaintiff alleges that Corporal Black conducted the investigation, but the Report of Investigation states that Sergeant Nicholas Zook conducted the investigation. Jt. Ex. 15, ECF No. 14-5.

public," in violation of the citizen's "civil rights and Prince George's Police Department policy." Compl. ¶¶ 5, 23, 29–33.  Butterworth gave Corporal Bodenhorn an "anonymous letter" regarding the incident for him to "pass. . . on to higher officials," but "[b]y the end of April 2014, word had spread throughout District 4 that Officer Butterworth had filed a police abuse complaint."  *Id.* ¶¶ 33, 34, 42.

Butterworth claims that "Corporal Black was telling the members of Officer Butterworth's squad to stay away from Office Butterworth because he's a 'snitch' and a 'rat,'" "not to talk to him," and "not to respond to Officer Butterworth's calls for back up."  *Id.* ¶¶ 37–38, 47.  Three weeks after Butterworth's anonymous letter, on May 7, 2014, Butterworth was suspended "without an official reason for the suspension."  *Id.* ¶ 46.  Then, on July 18, 2014, he was suspended again "without an official reason for the suspension."  *Id.* ¶ 49.

After that, the investigation of the November incident concluded and Butterworth was charged with three counts of excessive force and four of lying and "served with termination papers" on September 1, 2014.  *Id.* ¶¶ 53–55.  The police disciplinary board cleared all but one excessive force charge, and his employment was terminated based on that one charge on April 17, 2015.  *Id.* ¶¶ 61–63.

Butterworth filed a Petition for Judicial Review in the Circuit Court for Prince George's County, in which he sought "to reverse the decision of the Administrative Hearing Board that found him guilty of Charge 1, use of excessive force."  Pl.'s Opp'n 7.  He did not raise any constitutional claims in state court.  The state court affirmed the administrative decision "to terminate [Butterworth's] employment for excessive force," *see* Def.'s Ex. 13, ECF No. 16-1, and Plaintiff appealed. *See* Def.'s Ex. 9, ECF No. 14-9.  That appeal is pending.

Before the state court issued its ruling, Butterworth filed a three-count, § 1983 complaint against Corporal Black, Lieutenant Jason Fisher, and the County, alleging violations of his First Amendment right to freedom of speech.  Compl. ¶¶ 65–83.  He believes that he was subjected to "harassment, threats, an intolerable and hostile work environment, and termination" in retaliation for "his whistleblowing police misconduct" regarding the March 2014 incident.  *Id.* ¶¶ 71, 78, 82.  In his view, his whistleblowing "was a substantial or motivating factor for the adverse employment action."  *Id.* ¶ 73.  While Plaintiff characterizes his pleading as one for "declaratory relief; injunctive relief, damages and to secure protection of and to redress deprivation of freedom of speech rights," he only asks the Court to "[i]ssue a declaratory judgment that Defendants' acts, policies, practices and procedures complained of herein [] violated Plaintiff's rights . . . and, Order Defendants to make whole Plaintiff" and "compensate the Plaintiff for emotional pain and suffering, and los[t] pay and benefits . . . ."  Compl. 2, 11.  He does not seek injunctive relief.  *See id.* at 11–12.

## Standard of Review

The County moves to dismiss and/or for summary judgment.  Butterworth's Complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Rule 12(b)(6)'s purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Velencia v. Drezhlo*, No. RDB-12-237, 2012

WL 6562764, at \*4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

The County also asserts collateral estoppel as an affirmative defense.  The Court may consider affirmative defenses such as collateral estoppel on motions to dismiss only when they "'clearly appear[] on the face of the complaint.'"  *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at \*2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation and quotation marks omitted)).  That is not the case here, as Butterworth filed suit before the circuit court issued its ruling, and collateral estoppel does not apply until there is a final adjudication on the merits.  *GAB Enters., Inc. v. Rocky Gorge Devel., LLC*, 108 A.3d 521, 530 (Md. Ct. Spec. App.), *cert. denied sub nom. Rocky Gorge Dev. v. GAB Enters.*, 114 A.3d 711 (Md. 2015).  Therefore, I will treat the County's motion as one for summary judgment insofar as it relies on collateral estoppel.  *See Kalos*, 2012 WL 6210117, at \*2.

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009).  Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).

### *Younger* Abstention

The County first argues that this Court should abstain from ruling in this case based on

*Younger v. Harris*, 401 U.S. 37 (1971). Def.'s Mot. 3.[6]  The *Younger* abstention doctrine

> "requires a federal court to abstain from interfering in state proceedings, even if
> jurisdiction exists," when there is "(1) an ongoing state judicial proceeding,
> instituted prior to any substantial progress in the federal proceeding; that (2)
> implicates important, substantial, or vital state interests; and (3) provides an
> adequate opportunity for the [party] to raise the federal constitutional claim
> advanced in the federal lawsuit."

*B.G. v. Malhotra*, No. RDB-15-2663, 2016 WL 3384941, at *6 (D. Md. June 20, 2016) (quoting

*Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008)).

*Younger* abstention is an exception to the general rule that "federal courts are obliged to

decide cases within the scope of federal jurisdiction," and the Supreme Court has "cautioned . . .

that federal courts ordinarily should entertain and resolve on the merits an action within the

scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the

States.'" *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (quoting *New Orleans*

*Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 368 (1989) ("*NOPSI*")).

While the Supreme Court "has extended *Younger* abstention," which originally only applied to

state criminal prosecutions, "to particular states civil proceedings that are akin to criminal

prosecutions, or that implicate a State's interest in enforcing the orders and judgments of its

courts," the doctrine nonetheless applies only under "'exceptional'" circumstances "in which the

---

[6] Even though the state court issued its final judgment, the proceedings still are considered
"ongoing" for abstention purposes because Butterworth filed an appeal. *See Larsen v. CIGNA
HealthCare Mid-Atl., Inc.*, 224 F. Supp. 2d 998, 1007 (D. Md. 2002) ("[T]he fact that one case
has reached the appellate stage counsels for abstention." (citing *Huffman v. Pursue, Ltd.,* 420
U.S. 592, 608 (1975)).  Indeed, in *Huffman*, the Supreme Court "observ[ed] that, where state
proceedings have reached an advanced stage, federal 'intervention . . . is if anything more highly
duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the
capabilities and good faith of state appellate courts.'"  *Id.* (quoting *Huffman*, 420 U.S. at 608).

prospect of undue interference with state proceedings counsels against federal relief." *Id.* (quoting *NOPSI,* 491 U.S. at 373; citing *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975); *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1 (1987)).

Butterworth does not address the three frequently mentioned (including by the County in its Reply, *see* Def.'s Mot. 5–6) elements of *Younger* abstention, relying instead on an argument that this Court should not abstain under *Younger* because the cases are not "parallel." Pl.'s Opp'n 9. But, the cases Butterworth cites from the Fourth Circuit and this Court discuss the *Colorado River*[7] doctrine, not the *Younger* abstention doctrine. Certainly, "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns*, 134 S. Ct. at 588. That does not mean, however, that *Younger* abstention is limited to when the state and federal suits are parallel, and Butterworth has not identified any authority requiring the cases to be parallel for *Younger* abstention purposes. As noted, the requirement for the *Younger* doctrine to apply is that the federal case would interfere in an "ongoing state judicial proceeding . . . that . . . implicates important, substantial, or vital state interests[] and . . . provides an adequate opportunity for the [party] to raise the federal constitutional claim advanced in the federal lawsuit." *Laurel Sand & Gravel*, 519 F.3d at 165; *see B.G.*, 2016 WL 3384941, at *6 (same). Thus, the state court litigation need not have addressed the same claims but rather must have provided the opportunity for Plaintiff to raise those claims, had Plaintiff chosen to do so. *See Laurel Sand & Gravel*, 519 F.3d at 165; *see B.G.*, 2016 WL 3384941, at *6.

Here, the requisites for *Younger* abstention are present. In this regard, I adopt the County's sound analysis, which Butter did not rebut:

---

[7] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

First, there is an ongoing state judicial proceeding. The state proceeding was commenced prior to Plaintiff filing his lawsuit in this Court and there has not been any substantial progress in the case before this Court. Second, the issues raised in Plaintiff's Complaint implicate important, substantial or vital state interests. The "importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature." *Middlesex*, 457 U.S. at 432. The nature of the state court proceedings exemplify criminal proceedings in that 1) an investigation was conducted prior to Plaintiff's administrative hearing; 2) Plaintiff was advised of his rights; 3) he could elect to have counsel present during his interview; and 4) he was found guilty.

Third, Plaintiff had an adequate opportunity to raise the constitutional claims in the Circuit Court. In his administrative hearing, Plaintiff was entitled to a hearing on the issues and the Board could hear any evidence with probative value. *See* Md. Code Ann., Pub. Safety § 3-107(f)(1); *see*[] *also*[] Prince George's County Code § 16-202. There was no barrier to Plaintiff raising as a defense that he should not be terminated because he had exercised his First Amendment rights and that he was an alleged "whistleblower" as he now claims. *See Younkers v. Prince George's County, Md.*, 33 Md. 14 (1993) (Police officer alleged that his criticism of another officer constituted protected speech.)

Def.'s Mot. 6.

Indeed, "the burden . . . rests on the federal plaintiff to show 'that state procedural law bar[s] presentation of [its] claims,'" and therefore "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, 15 (1987) (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)); *see Lupin Pharm., Inc. v. Richards*, No. RDB-15-1281, 2015 WL 4068818, at *5 (D. Md. July 2, 2015), *appeal dismissed* (Mar. 15, 2016).  It does appear that Butterworth could have raised his § 1983 claims in state court, as former police sergeant Randy Blades did in *Blades v. Woods*, 659 A.2d 872, 872–73 (Md. 1995). There, Blades had been "found guilty of improper conduct" and "demoted to police officer," and he "filed an action in the Circuit Court for Baltimore City in which he requested judicial review of the departmental decision and in which he also claimed damages for an alleged violation of 42 U.S.C. § 1983."

*Id.* He alleged that "he had been disparately treated in relation to similarly situated minorities." *Id.* The police department sought, and the trial court granted, "a severance of the § 1983 claim from the review of administrative action." *Id.* But, significantly, his § 1983 claim was not dismissed. *See id.*

The proper remedy, however, is not dismissal but a stay. Although the County asserts that "[a]bstention applies to claims for both equitable relief and monetary damages in § 1983 claims" and seeks *dismissal* of all of Plaintiff's claims, Def.'s Mot. 3, it acknowledges in its briefing that "[t]he court should exercise its discretion to *stay* § 1983 proceedings where plaintiff seeks monetary damages." *Id.* at 4 (emphasis added). And, in *Traverso v. Penn*, 874 F.2d 209, 213 (4th Cir. 1989), where the plaintiff sought monetary, injunctive, and declaratory relief, the Fourth Circuit concluded that "the appropriate course [was] to abstain by staying proceedings on monetary as well as injunctive and declaratory claims." Further, the Supreme Court has stated that "causes of action for damages . . . may be stayed but not dismissed on abstention grounds." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996). Therefore, I will stay, but not dismiss, Butterworth's claims during the pendency of the state court litigation. *See id.*; *Traverso*, 874 F.2d at 213.

### *Rooker–Feldman*

When the County raised collateral estoppel for the first time in its Reply (not having done so in its opening brief because the state court had not issued its judgment when the County filed its motion), I ordered the parties to submit supplemental briefing on the issue. ECF No. 30. In its Supplement, the County asserted another new basis for dismissal: the *Rooker–Feldman* doctrine. *See* Def.'s Supp. 5–8. *Rooker–Feldman* is jurisdictional. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) ("Because the *Rooker–Feldman* doctrine is

jurisdictional, we are obliged to address it before proceeding further in our analysis."); *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, No. 15-1660, 2016 WL 3536694, at *3 (4th Cir. June 28, 2016) (noting that Congress did not "confer on district courts appellate jurisdiction over state court judgments" (emphasis removed)).  Therefore, I must consider it, *see* Fed. R. Civ. P. 12(h)(3), although the County should have raised the issue in its Reply, if at all.  But, because the doctrine is inapplicable, I will not order additional briefing.

The *Rooker–Feldman* doctrine "holds that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Thana*, 2016 WL 3536694, at *3 (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)).  It "assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court *specifically* to review that state court judgment."  *Id.* at *4.  Thus, the doctrine is 'confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."'" *Id.* at *3 (quoting *Lance*, 546 U.S. at 464 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))).  To emphasize the narrow scope of the doctrine, "the Supreme Court has noted repeatedly that, since the decisions in *Rooker* and *Feldman*, it has *never* applied the doctrine to deprive a district court of subject matter jurisdiction," and, "since *Exxon*, [the Fourth Circuit has] never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine."  *Id.* at *4.

Here, Plaintiff simply is not "alleging injury caused by a state court judgment."  *See id.* at *5.  He does not argue that, contrary to the state court's ruling, he did not use excessive force or that his use of excessive force would not constitute a proper basis for his termination.  *See*

Compl.  Therefore, a ruling in Plaintiff's favor in this case would not overturn the state court judgment.  The *Rooker–Feldman* doctrine is inapplicable.  *See Thana*, 2016 WL 3536694, at *5; *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008) ("[T]he *Rooker–Feldman* doctrine only bars collateral attacks on state court judgments; it does not supplant the normal rules of preclusion," and it does not apply when the plaintiff "does not seek to have the … judgment on his state law claims overturned.").

And, even if he were challenging the state court judgment, the *Rooker–Feldman* doctrine would not apply because of the procedural posture of Plaintiff's state court litigation, which is currently on appeal to the Maryland Court of Special Appeals.  *See Thana*, 2016 WL 3536694, at *5.  He is not asking this Court "to exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which a decision could be had.'"  *Id.* (quoting 28 U.S.C. § 1257(a) (emphasis added)).  Moreover, given that the state court litigation is still "on track for potential review by the U.S. Supreme Court," and this suit would not "bypass the Supreme Court's appellate jurisdiction under 28 U.S.C. § 1257(a) over any relevant state court judgment," Plaintiff's suit in this Court does not implicate the purpose behind the *Rooker–Feldman* doctrine—to prevent litigants from frustrating the Supreme Court's jurisdiction.  *Id.* at *6.  Therefore, "this federal action is a concurrent, independent action supported by original jurisdiction conferred by Congress on federal district courts," and the *Rooker–Feldman* doctrine does not apply.  *See id.* at *4.

## Collateral Estoppel

The County also argues for dismissal under collateral estoppel, now that the state court has entered a final judgment.  Def.'s Reply 3.  Collateral estoppel is "'based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial

proceedings, on issues raised . . . .'" *Grady Mgmt., Inc. v. Epps*, 98 A.3d 457, 472 (Md. Ct. Spec.

App. 2014) (citation omitted).[8]   The doctrine bars relitigation of an issue if a defendant

demonstrates that (1) there was "a final judgment on the merits in the prior litigation"; (2) "the

party against whom the plea is asserted" was "a party or in privity with the party in the prior

adjudication"; (3) "the issue decided in the prior litigation [is] identical with the issue presented

in the subsequent litigation"; and (4) "the issue actually litigated [was] essential to the judgment

in the prior action."   *GAB Enters., Inc. v. Rocky Gorge Devel., LLC*, 108 A.3d 521, 530 (Md. Ct.

Spec. App.), *cert. denied sub nom. Rocky Gorge Dev. v. GAB Enters.*, 114 A.3d 711 (Md. 2015).

If all issues raised in the subsequent suit are identical to the issues presented in the previous suit,

then dismissal is appropriate.   *E.g.*, *Graves v. OneWest Bank, FSB*, No. PWG-14-1995, 2015 WL

2452418, at *1 (D. Md. May 20, 2015).   Butterworth challenges the second and third element.

<u>Parties</u>

Butterworth asserts that the defendants are different.   *See* Pl.'s Surreply 10, 12.   As the

doctrine originally applied, this fact could have defeated its use.   *See Garrity v. Md. State Bd. of*

*Plumbing*, 135 A.3d 452, 458 (Md. 2016) ("Traditionally, collateral estoppel contemplates a

'mutuality of parties,' meaning that an issue that was litigated and determined in one suit will

have preclusive effect in a second suit when the parties are the same as, or in privity with, those

who participated in the first litigation.").   But now, "[t]he mutuality requirement has been

relaxed, . . . so long as the other elements of collateral estoppel are satisfied." *Id.* at 459.   All that

is required for this element is that "'*the party against whom the plea is asserted* [was] a party or

---

[8] Maryland law regarding collateral estoppel applies because the relevant prior proceeding was in a Maryland state court, and this Court "must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

in privity with a party to the prior adjudication.'"  *Id.* (quoting *Colandrea v. Wilde Lake Cmty.*

*Assoc.,* 761 A.2d 899, 909 (Md. 2000)) (emphasis added).  The County raises collateral estoppel

as a defense to Butterworth's claims against it, and it is undisputed that Butterworth was a party

to the circuit court proceedings.  Therefore, this element is present.  *See id.*

<u>Identical Issues</u>

In Butterworth's view, this lawsuit raises different issues than the state court litigation.

*See* Pl.'s Surreply 1, 9–12.  Collateral estoppel "preclude[s] relitigation of issues that the same

parties already had litigated."  *GAB*, 108 A.3d at 530.  This means that "'the judgment in the

prior action operates as an estoppel *only as to those matters in issue or points controverted*, upon

the determination of which the finding or verdict was rendered.'"  *Id.* (quoting *John Crane, Inc.*

*v. Puller,* 899 A.2d 879, 891 (Md. Ct. Spec. App. 2006) (quoting *LeBrun v. Marcey*, 86 A.2d

512, 514 (Md. 1952) (citations and quotation marks omitted)) (emphasis in *GAB Enters.*

removed; emphasis added)).  Notably, unlike *res judicata*, which bars a party from bringing any

"'matter that [was] decided in the original suit,'" as well as "'all matters which with propriety

could have been litigated in the first suit,'" collateral estoppel "means that if a previous case took

place between the same parties or their privies, and the fact-finder made a finding that was

'essential to' the judgment entered, all future cases between those parties are stuck with *that*

finding and cannot re-litigate *the question*." *Mostofi v. Midland Funding, LLC*, 117 A.3d 639,

644 (Md. Ct. Spec. App. 2015) (quoting *Lizzi v. Wash. Metro. Transit Auth.*, 862 A.2d 1017,

1022 (Md. 2004) (quoting *Alvey v. Alvey*, 171 A.2d 92, 94 (Md. 1961)); *Welsh v. Gerber Prods.,*

*Inc.*, 555 A.2d 486, 489 (Md. 1989)) (emphasis added).   Thus, "'the inquiry must always be as

to *the point or question actually litigated and determined* in the original action, *not what might*

*have been thus litigated and determined*. Only upon such matters is the judgment conclusive in

another action.'"   *John Crane, Inc.*, 899 A.2d at 891–92 (quoting *LeBrun*, 86 A.2d at 514 (citations and quotation marks omitted)) (emphasis added; original emphasis removed).

The County notes that "[a]n issue may be collaterally estopped even if a plaintiff did not raise that particular *legal theory* in prior proceed because 'the concern of collateral estoppel law is with the preclusion of duplicative *fact-finding*.'"   Def.'s Supp. 5 (quoting *John Crane, Inc.*, 889 A.2d at 894) (emphasis added).   That is true with regard to legal theories.   *See John Crane, Inc.*, 889 A.2d at 894.   But, the County then asserts that, "[t]hus, the bar arises not only to all matters litigated, but also to all those that *could and should have been litigated*, and are therefore deemed conclusive."   *Id.* (citing *Colandrea*, 761 A.2d at 910) (emphasis added).   Indeed, in *Colandrea*, the Court of Appeals of Maryland said: "The judgment in the prior case has collateral estoppel effects on all issues there raised, or that should have been raised."   *Colandrea*, 761 A.2d at 910.

Yet, in *Colandrea*, the Court of Appeals differentiated collateral estoppel from *res judicata*, stating clearly that, "for the doctrine of collateral estoppel to apply, the probable fact-finding that undergirds the judgment used to estop must be scrutinized to determine if the issues raised in that proceeding were *actually litigated*, or facts necessary to resolve the pertinent issues were adjudicated in that action," whereas under the doctrine of *res judicata*, "a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit.*"   *Id.* (first emphasis added; second emphasis in *Colandrea*).   Moreover, the Court of Appeals more recently has stated that "the doctrine of collateral estoppel provides that, '"[w]hen an issue of fact or law is *actually litigated* and determined by a valid and final judgment, and the determination is essential to the judgment,

the determination is conclusive in a subsequent action between the parties, whether on the same

or a different claim."'" *Garrity v. Md. State Bd. of Plumbing*, 135 A.3d 452, 458 (Md. 2016)

(quoting *Cosby v. Dep't of Human Res.,* 42 A.3d 596, 602 (Md. 2012) (quoting *Murray Int'l*

*Freight Corp. v. Graham,* 555 A.2d 502, 504 (Md. 1989)) (emphasis added)).   Therefore, under

the circumstances of this case, collateral estoppel bars only the litigation of facts that the state

court actually decided, and not those factual issues that could have been, but were not, raised.

*See id.*

    To determine whether collateral estoppel bars relitigation of the issues before this Court, I

must consider what facts Butterworth must prove for his § 1983 claims in this Court.

Butterworth quotes the elements of a prima facie case of retaliation in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17.  Pl.'s Surreply 6, 10 (quoting *King*

*v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)).  Yet, he brings his claims under § 1983.  To

prevail on a First Amendment retaliation claim under § 1983 against an employer, a plaintiff

must establish that (1) he "was speaking as a citizen upon a matter of public concern," as

opposed to "as an employee about a matter of personal interest"; (2) his "interest in speaking

upon the matter of public concern outweighed the government's interest in providing effective

and efficient services to the public"; and (3) his "speech was a substantial factor in [his]

termination decision."  *Brickey v. Hall*, No. 14-1910, --- F.3d ----, 2016 WL 3648462, at *4 (4th

Cir. July 8, 2016) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998) (citing

*Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992)).  Alternatively, a

plaintiff who experiences an adverse employment action other than termination may establish the

first two elements and that (3) he "was deprived of some valuable benefit"; and (4) "a causal

relationship exists between [his] protected expression on matters of public concern and the loss of the benefit." *Peters v. Jenney*, 327 F.3d 307, 322 (4th Cir. 2003).

In *Stroman*, the Fourth Circuit stated that the employer may rebut the employee's showing "that protected speech played a 'substantial' role in the termination decision or was 'a motivating factor' . . . by proof that it would have discharged the plaintiff 'even in the absence of the protected conduct.'" 981 F.2d at 156 (quoting *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).  Consequently, the question is "whether the [employee] would have been retained . . . 'but for' his exercise of speech protected by the First Amendment."  *Id.*  Put differently:

> The "causal relationship" inquiry focuses on whether [the adverse employment action would not have been taken] "'but for' [the employee's] protected speech" and "involves two steps . . . . In the first step, the employee bears the burden of establishing the requisite causation to prove that the protected speech was a motivating factor or played a substantial role" in inducing the adverse action. *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 193 (4th Cir. 1994). "If the employee is able to prove such, the second step shifts the burden to the employer to put forward evidence that it would have [taken adverse action] even in the absence of the protected speech." *Id.*

*Peters*, 327 F.3d at 323; *see Minnick v. Cnty. of Currituck*, 521 F. App'x 255, 263 (4th Cir. 2013) (stating third element as "a sufficient causal nexus between the protected speech and an alleged adverse employment action" and noting that it "requires proof of a sufficient nexus between protected speech and an adverse employment action by [plaintiff's] employer"; citing *Huang v. Bd. of Governors,* 902 F.2d 1134, 1141 (4th Cir. 1990), in which the Fourth Circuit "dismiss[ed] First Amendment § 1983 claim for failure to show 'but for' connection").

Butterworth insists that what was at issue in state court was whether he used excessive force, whereas here what is at issue is whether Defendants retaliated against him for whistleblowing.  *See* Pl.'s Surreply 8–9, 11.  As the County see it, the issue in both cases is

"[t]he propriety of Plaintiff's termination," and because Butterworth's employment was terminated for use of excessive force, he "should be collaterally estopped from asserting that his termination was pretextual."  Def.'s Reply 4.  Reviewing the two cases, it is clear that, in the state court proceeding, the court determined that Butterworth was guilty of use of excessive force and affirmed the Prince George's County Police Department Administrative Hearing Board's decision "to terminate Petitioner's employment for excessive force."  Def.'s Ex. 13.  Here, Plaintiff claims that Defendants retaliated against him for whistleblowing, in violation of his First Amendment right to freedom of speech, by harassing and threatening him, creating a hostile work environment, and terminating his employment. Compl. ¶¶ 65–83.

Butterworth is collaterally estopped from litigating whether he used excessive force (he did) or whether it was proper to terminate him for using excessive force (it was), because the state court already made those findings.  *See* Def.'s Ex. 13; *GAB*, 108 A.3d at 530.  But, the state court did not address whether the County "would have [terminated him] even in the absence of the protected speech." Although the County *could* have terminated Butterworth because of his excessive force alone, it is not clear at this juncture whether it could have chosen to retain him instead.  Given that discretion, the current record does not preclude the possibility that, despite his use of excessive force, the County would have retained him but for his whistleblowing.

Moreover, Butterworth also alleges that he was suspended, harassed, and subjected to a hostile workplace because of his excessive speech.  Compl. ¶¶ 65–83.  None of those facts were litigated in state court, and therefore Butterworth is not collaterally estopped from bringing those claims in this Court.  *See* Def.'s Ex. 13; *GAB*, 108 A.3d at 530.  Therefore, collateral estoppel bars nothing more than the relitigation of the two facts that the state court determined: Butterworth used excessive force, and it was proper to terminate him based on that use of force.

## **ORDER**

Accordingly, it is, this 6th day of September, 2016 hereby ORDERED that

1. The County's Motion to Dismiss and/or for Summary Judgment, ECF No. 14, IS GRANTED IN PART AND DENIED IN PART as follows:

    a.  Collateral estoppel bars the relitigation of the two facts that the state court determined: Butterworth used excessive force, and it was proper to terminate his employment based on that use of excessive force;

    b.  The Clerk IS DIRECTED to STAY THIS CASE pending resolution of the state court litigation; and

    c.  The motion otherwise IS DENIED; and

2. Plaintiff SHALL SHOW CAUSE by September 20, 2016 why his claims against Defendants Corporal Clarence Black, Lieutenant Jason Fisher should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8(a).


                                          /S/
                                      Paul W. Grimm
                                      United States District Judge